# UNITED STATES DISTRICT COURT

for the

District of Oregon

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

The digital devices as described in Attachments A-1 and A-2

)
)
)
)
)
)

Case No.  3:25-mc-586 A-B

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

The digital devices as described in Attachments A-1 and A-2 hereto.

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized):*

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1343 and 1349 | Wire Fraud and Conspiracy |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Christopher Polinsky by phone
*Applicant's signature*

HSI Special Agent Christopher Polinsky
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone at 4:09 _____ pm    *(specify reliable electronic means).*

Date:  May 20, 2025

*Judge's signature*

City and state:  Portland, Oregon      Hon. Jeffrey Armistead, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:          AFFIDAVIT OF CHRISTOPHER POLINSKY

**Affidavit in Support of an Application Under Rule 41
for a Warrant to Search and Seize Evidence Including Digital Evidence**

I, Christopher Polinsky, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the Homeland Security Investigations (HSI) and have
been since May 2008.   My current assignment is HSI Portland Global Trade and National
Security Investigations group in Portland, Oregon. While employed with HSI, I have attended
numerous training courses, including the Immigration and Customs Enforcement Special Agent
Training course, Criminal Investigator Training Program, and specialized courses in financial
crimes, computer forensics and child exploitation investigations. I have over 16 years of
experience as a law enforcement officer. As a Special Agent, I have participated in numerous
investigations as either the lead case agent or as a supporting investigative agent.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal
Rules of Criminal Procedure for a search warrant authorizing the search and examination of (1)
Apple iPhone 11 with International Mobile Equipment Identification (IMEI) number
353182932126419 as described in Attachment A-1 and (1) Apple iPhone that is purple in color
and has silicone case as described in Attachment A-2, which are both currently stored, in law
enforcement possession, at the HSI Portland Office, 4310 S Macadam Ave., Suite 400, Portland,
OR 97239 (collectively hereinafter **"Devices"**) and the extraction of electronically stored
information from the **Devices**, as described in Attachment B hereto.   As set forth below, I have
probable cause to believe and do believe that the items set forth in Attachments A-1 and A-2
constitute evidence contraband, fruits, and instrumentalities of violations of 18 U.S.C. § 1349,

**Affidavit of Christopher Polinsky**                                              **Page 1**

conspiracy to commit wire fraud, 18 U.S.C. § 1343, wire fraud, and 18 U.S.C. § 2, aiding and abetting (hereinafter "Subject Offenses").

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4.      I believe there is probable cause to believe that evidence of the following violations will be found in the places to be searched:

a.      18 U.S.C. § 1343 and 1349 make it unlawful for any individual, having devised or intended to devise any scheme or artifice to defraud, or for the obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, and to conspire to do so.

### Additional Information About Organized Retail Crime (ORC) and the Scheme to Defraud Retailers of Heavy-Duty Equipment.

5.      I have conducted financial investigations involving money laundering, fraud, wire fraud, bank fraud, identity theft, among other things. Through training and experience, I have become familiar with ORC. In general, ORC is the large-scale theft of retail merchandise with

**Affidavit of Christopher Polinsky**                                                      **Page 2**

the intent to resell the items for financial gain. ORC typically involves a criminal enterprise employing a group of individuals who steal, defraud, and/or comprise a scheme to defraud large quantities of merchandise and other items of value from various stores and a fencing operation that converts the stolen and/or fraudulently obtained goods into cash. These items are often sought due to their high liquidity and value. Stolen and fraudulently obtained items are then often sold through online auction sites, at flea markets, and even to other retailers, who are often unwitting buyers.

6.      This scheme generally requires the perpetrators to be in communication, which is often done via cell phone via voice communications, text messages, and other messaging applications (i.e., WhatsApp, Facebook Messenger, Signal, etc.).

7.      Through Special Agent (SA) Chad Lindsly's investigation in this case, I have learned that during at least the past year, The Home Depot (THD) has been the target of increased incidents involving the rental and subsequent theft of heavy-duty equipment, including dingoes, skid steers, and mini excavators. These rental incidents have had a direct and indirect financial impact on THD in excess of millions of dollars. This heavy-duty equipment is targeted because of its high value, liquidity, and ease to rent the high-valued equipment.

8.      Often, in an attempt to deter ORC, heavy-duty equipment rental retailers like THD install covert tracking devices on the high-valued equipment in the event the retailer needs to locate and recover stolen or fraudulently obtained heavy-duty equipment. In general, criminal enterprises are becoming more aware of this technique and are subsequently removing the covert tracking devices shortly after taking possession of the heavy-duty equipment. Criminal enterprises are also removing and defacing THD's markings on the equipment. These efforts are made to deter retailer and law enforcement investigation and recovery of the assets.

**Affidavit of Christopher Polinsky**                                              **Page 3**

Additionally, based on my knowledge, training, experience, and talking to other agents, I believe the removal of the covert tracking devices and THD's markings by the criminal enterprise is strong evidence that the overall intent of the rental of the equipment was a scheme to defraud the retailer of the asset and not a legitimate rental.

9.      Based on my knowledge, training, experience, and talking to other agents, I know that it is often common for those engaged in ORC to frequently travel to a jurisdiction(s) outside of their respective normal geographic area, i.e., where the individuals reside and frequent. This is done for several reasons. First, traveling to a different jurisdiction to commit the offense makes it more difficult to identify the perpetrator(s). Second, if a suspect(s) is positively identified, it can be difficult for one state and local law enforcement agency to investigate outside of its' respective jurisdiction and/or request support from the related jurisdiction (i.e., the crime was committed in jurisdiction A but the suspect(s) resides in jurisdiction B). Third, most of the rental incidents (i.e., the rental of a piece of heavy-duty equipment and the failure to return the equipment) are viewed as a property crime and seldomly investigated due to strained police resources, among other things. Fourth, often the recovery of the stolen and/or fraudulent obtained asset occurs in another jurisdiction (i.e., a different jurisdiction than where the perpetuator(s) resides and where the crime occurred).

## Statement of Probable Cause

10.      In September 2023 HSI Portland and SA Lindsly initiated an investigation into a fraudulent rental / theft scheme of heavy-duty equipment from THD and the respective individuals that were directly and indirectly involved. The individuals that rented the equipment generally used their real driver's licenses, which assisted in the investigation. The purpose of the rentals was to defraud THD of the respective asset, which would be resold to an unwitting

**Affidavit of Christopher Polinsky**                                **Page  4**

purchaser via an online platform, including at least Facebook Marketplace. The resale of the asset by the perpetuator(s) would be supported by fraudulent documents and the removal of THD's unique identifying markings on the asset. The resale value would be significantly less than the true value of the asset. This was corroborated by at least one asset located as part of the investigation.

11.     SA Lindsly learned that an Asset Protection Specialist (APS) with THD was assigned to this investigation.   SA Lindsly reviewed THD internal investigative reports and other work product materials, CCTV footage and still frames, police reports from various local police departments, and spoke directly with THD APS regarding the facts and circumstances around the internal fraud investigation.

12.     In summary, SA Lindsly learned that THD APS had identified and linked at least 21 rentals (including one attempted) and subsequent thefts of heavy-duty equipment from more than 17 THD locations in Oregon, Washington, and California between the time period of May 23 – July 5, 2023. SA Lindsly learned that the same vehicles were used to drive away with THD's asset, the same credit card numbers were used for the rental deposits, real driver's licenses were used to rent the equipment, and CCTV still frames showed the people involved with the rentals.

13.     On November 9, 2023, U.S. Magistrate Judge Honorable Jolie Russo authorized the search of the multiple cellular phone locations, including historical data, by signing Oregon District Court search warrant 3:24-mc-976 A-E and 3:24-mc-981 A-G.

14.     On April 2, 2024, the investigation was presented to a grand jury in the District of Oregon, who returned a true bill charging Roy Lennel Clark, Lawrence Shaw, Olivia Harris,

**Affidavit of Christopher Polinsky**                                                                      **Page  5**

Ronald Newton, Davarian McCrary, Julian Pace, and Zipporah Myers for their involvement in the fraud scheme.

15.     On April 4, 2024, active arrest warrants for the seven defendants were entered into the National Crime Information Center (NCIC).

16.     On April 28, 2025, U.S. Magistrate Judge Honorable Stacie Beckerman authorized the search of the cellular phone location for defendant Lawrence Shaw, including historical data, by signing Oregon District Court search warrant 3:25-mc-478.

17.     Based on geolocation data provided pursuant to the search warrant, on May 7, 2025, Lawrence Shaw was arrested by HSI Los Angeles on his outstanding federal warrant. A search of Shaw incident to arrest revealed a Georgia State driver's license and the **Devices**, two Apple iPhones which were seized by HSI Los Angeles. On the same day, HSI Los Angeles shipped the **Devices** and the Georgia driver's license to HSI Portland for further investigation.

18.     On May 12, 2025, HSI Portland received the **Devices**. I examined the **Devices** and noted they were both on. I also observed there were numerous cracks and damage to the glass on the front and back of the **Devices**. I removed the Subscriber Identity Module (SIM) card from the first Apple iPhone and recorded the IMEI number on the tray as 353182932126419 (photo of IMEI and Apple iPhone in Attachment A-1). The IMEI number identifies the device on the mobile provider's network. The second Apple iPhone is purple and has a silicone case on it (photo of Apple iPhone and case in Attachment A-2). The IMEI number could not be identified at the time of the review. HSI Portland documented the receipt and then transferred the phone to the evidence vault located at 4310 S Macadam Ave, Portland, Oregon 97239.

19.     I believe that a search of the **Devices** seized during the arrest of Lawrence Shaw will provide me with valuable information concerning Shaw's whereabouts before, during, and

**Affidavit of Christopher Polinsky**                                         **Page 6**

after identified rentals, including in likely identifying the geographic whereabouts of the heavy-duty equipment that was likely sold to unwitting buyers. Additionally, the search of the **Devices** will assist me in confirming the identities of other members of the Domestic Criminal Organization (DCO) and locations likely used to store proceeds, transaction receipts, rental contracts, paperwork documenting the sale of the assets to unwitting purchasers, and other evidence of the Subject Offenses. I believe that a search of the **Devices** will assist my investigation in understanding the context and content of communications between identified members of the DCO, including text messages. A detailed toll analysis in temporal proximity to the rentals revealed communications between members of the DCO, including members that appeared to not be physically present during the rental(s). This is strong evidence that the members of the DCO were working in concert in furtherance of the Subject Offenses. I also believe that a search of the **Devices** will provide me with evidence corroborating the THD APS internal fraud investigation and HSI Portland's subsequent investigation.

20.　　　The **Devices** are currently in storage at HSI Portland's evidence room.　In my training and experience, I know that the **Devices** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Devices** first came into the possession of HSI Portland.

21.　　　Based on my training and experience, I use the following technical terms to convey the following meanings:

　　　　a.　　*Wireless telephone*.　A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.　These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

**Affidavit of Christopher Polinsky**　　　　　　　　　　　　　　　　　　　　　　　**Page 7**

traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b.    *Storage medium*.   A storage medium is any physical object upon which computer data can be recorded.   Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

      c.    *IP address*.   An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.   Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.   Most Internet service providers control a range of IP addresses.   Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      d.    *Internet*.   The Internet is a global network of computers and other electronic devices that communicate with each other.   Due to the structure of the

**Affidavit of Christopher Polinsky**                         **Page  8**

Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

22.     Based on my training, experience, and research, I know that the **Devices** have

capabilities that allow it to serve as a wireless telephone, digital camera, GPS navigation device,

and access to the internet.   In my training and experience, examining data stored on devices of

this type can uncover, among other things, evidence that reveals or suggests who possessed or

used the device.

23.     Based on my knowledge, training, and experience, I know that electronic devices

can store information for long periods of time.   Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device.   This information can

sometimes be recovered with forensics tools.

24.     There is probable cause to believe that things that were once stored on the

**Devices** will still be stored there because, based on my knowledge, training, and experience, I

know:

    a.     Electronic files or remnants of such files can be recovered months or even

years after they have been downloaded, deleted, or viewed via the Internet.   Electronic

files downloaded to a storage medium can be stored for years at little or no cost.   Even

when files have been deleted, they can be recovered months or years later using forensic

tools.   When a person "deletes" a file on a computer, the data contained in the file does

not actually disappear; rather, that data remains on the storage medium until it is

overwritten by new data.   Therefore, deleted files or remnants of deleted files, may

reside in free space or slack space—that is, in space on the storage medium that is not

currently being used by an active file—for long periods of time before they are

**Affidavit of Christopher Polinsky**                                                          **Page  9**

overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

b.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.   To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.   Computer users typically do not erase or delete this evidence, because special software is typically required for that task.   However, it is technically possible to delete this information.

c.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

25.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the **Devices** were used, the purpose of its use, who used it, and when.   There is probable cause to believe that this forensic electronic evidence will be on the **Devices** because, based on my knowledge, training, and experience, I know:

a.      Data on the **Devices** can provide evidence of a file that was once on the Device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device.   This "user attribution" evidence is analogous to the search for "indicia of

**Affidavit of Christopher Polinsky**                                                    **Page  10**

occupancy" while executing a search warrant at a residence.   For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the device at a relevant time.   Further, forensic evidence on a device can show how and when the device was accessed or used. Such "timeline" information allows the forensic analyst and investigators to understand the chronological context of access, use, and events relating to the crime under investigation.   This "timeline" information may tend to either inculpate or exculpate the device user.   Last, forensic evidence on a device may provide relevant insight into the device user's state of mind as it relates to the offense under investigation.   For example, information on a device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the device or password protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a computer (e.g., logs indicating that the incriminating information was accessed with a particular program).

      c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

**Affidavit of Christopher Polinsky**                                                    **Page 11**

d.    The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.   Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.   For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

26.    *Nature of examination*.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Devices** consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **Devices** to human inspection in order to determine whether it is evidence described by the warrant.

27.    The initial examination of the **Devices** will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.   If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant.   The government shall complete this review within 180 days of the date of execution of

**Affidavit of Christopher Polinsky**                                                    **Page  12**

the warrant.   If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

28.     If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the **Devices** or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.   Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

29.     If an examination is conducted, and it is determined that the **Devices** do not contain any data falling within the ambit of the warrant, the government will return the **Devices** to the owner within a reasonable period of time following the search and will seal any image of the **Devices**, absent further authorization from the Court.

30.     If the **Devices** contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the **Devices** as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the **Devices** and/or the data contained therein.

31.     The government will retain a forensic image of the **Devices** for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**Affidavit of Christopher Polinsky**                                                    **Page  13**

32.    *Manner of execution*.   Because this warrant seeks only permission to examine a **Devices** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

33.    Based on the foregoing, I have probable cause to believe, and I do believe, that the **Devices** described in Attachment A-1 and A-2 contains evidence contraband, fruits, and instrumentalities of violations of 18 U.S.C. § 1349, conspiracy to commit bank fraud, and 18 U.S.C. § 1343, wire fraud, as set forth in Attachment B.   I therefore request that the Court issue a warrant authorizing a search of the **Devices** described in Attachment A-1 and A-2 for the items listed in Attachment B and the seizure and examination of any such items found.

34.    Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Katherine Rykken. I was informed that it is AUSA Rykken's opinion that the affidavit and application are legally and factually sufficient to establish probable cause to support the issuance of the requested warrant.

*By phone pursuant to Fed. R. Crim. P. 4.1*
Christopher Polinsky
Special Agent, HSI

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 4:09 p.m. on May 20, 2025.

_____
HONORABLE JEFFREY ARMISTEAD
United States Magistrate Judge

**Affidavit of Christopher Polinsky**                    **Page  14**

**ATTACHMENT A-1**

**Property to Be Searched**

The property to be searched is an (1) Apple iPhone 11, IMEI 353182932126419, and is currently located in the HSI Portland evidence room, 4310 S. Macadam Ave., Suite 400, Portland, OR 97239.

 

**ATTACHMENT A-2**

**Property to Be Searched**

The property to be searched is an (1) Apple iPhone, purple in color with a silicone case,

and is currently located in the HSI Portland evidence room, 4310 S. Macadam Ave., Suite 400,

Portland, OR 97239.

 

**ATTACHMENT B**

**Items to Be Seized**

1.      All records on the Devices described in Attachments A-1 and A-2 that relate to violations of 18 U.S.C. § 1349, conspiracy to commit wire fraud, 18 U.S.C. § 1343, wire fraud, and 18 U.S.C. § 2, aiding and abetting, including:

        a.      Records or information relating to The Home Depot (THD) equipment rentals, sales/transfer of THD equipment rentals, or use of THD equipment rentals.

        b.      Evidence of who used, owned, or controlled the digital device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, calls, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence.

        c.      Records or information relating to digital or physical payment for rental or sale of THD equipment including cryptocurrencies, cryptocurrency wallets, seed words, mnemonic phrases and private keys.

        d.      Evidence indicating the digital device's user's state of mind as it relates to the offenses under investigation.

        e.      Contextual information necessary to understand the evidence described in this attachment.

        f.      Evidence of the times the digital device was used.

        g.      Evidence indicating how and when the phone was accessed or used to determine the chronological context of access, use, and events relating to the crime under investigation and to the digital device user.

h.      Passwords, encryption keys, and other access devices that may be necessary to access the digital devices.

i.      Records of or information about Internet Protocol addresses, cellular, or Wi-Fi networks used by the phone.

2.      Records evidencing the use of the Internet, including:

a.      Records of Internet Protocol addresses used.

b.      Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

c.      Records of data storage accounts and use of data storage accounts.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Search Procedure**

4.      The examination of the Devices may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

5.      The initial examination of the Devices will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the

**Attachment B**                                                                                          **Page 2**

warrant.  The government shall complete this review within 180 days of the date of execution of the warrant.  If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

6.      If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the Devices or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.  Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

7.      If an examination is conducted, and it is determined that the Devices do not contain any data falling within the ambit of the warrant, the government will return the Devices to its owner within a reasonable period of time following the search and will seal any image of the Devices, absent further authorization from the Court.

8.      If the Devices contain evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the Devices as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the Devices and/or the data contained therein.

9.      The government will retain a forensic image of the Devices for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory

**Attachment B**                                                                                    **Page 3**

evidence claims where, for example, a defendant claims that the government avoided its

obligations by destroying data or returning it to a third party.